**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CARL E. BAKER, MARTHA J. BAKER,　　　)
husband and wife,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)　2:18-cv-01566-RJC
　　　　　　　　　　Plaintiffs,　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　vs.　　　　　　　　　　　　　　　)　Judge Robert J. Colville
　　　　　　　　　　　　　　　　　　　　　)
RANGE RESOURCES-APPALACHIA,　　　　　)
LLC, UNITED RENTALS (NORTH　　　　　　)
AMERICA), INC, MAGNA SERVICE　　　　　)
AGENCY, INC., GUARDIAN OFS, LLC,　　　)
THE GATEWAY ENGINEERS, INC.,　　　　　)
ALEX E. PARIS CONTRACTING　　　　　　)
COMPANY, INC.,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　Defendants.　　　　　　)

**<u>MEMORANDUM OPINION</u>**

Robert J. Colville, United States District Judge

Before the Court are the Motions for Summary Judgment filed by the following Defendants: (1) The Gateway Engineers, Inc. ("Gateway") (ECF No. 108); (2) Alex E. Paris Contracting Company, Inc. ("Paris") (ECF No. 112); and (3) Magna Service Agency, Inc. ("Magna") (ECF No. 115). Each of these three Defendants seeks judgment in its favor with respect to the claims set forth against each Defendant, respectively, in the Amended Complaint (ECF No. 19) filed by Plaintiffs Carl E. Baker ("Mr. Baker") and Martha J. Baker ("Mrs. Baker") (collectively, "Plaintiffs"). Each of the Moving Defendants also seeks judgment in its favor with respect to the relevant crossclaims asserted by Defendants Range Resources-Appalachia, LLC

("Range Resources") (ECF No. 24) and Guardian OFS, LLC ("Guardian") (ECF No. 35), as well as the respective crossclaims asserted by Magna (ECF No. 51), Gateway (ECF No. 32), and Paris (ECF No. 59), against each of the Defendants in their respective Answers and Crossclaims. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a). The Motions at issue have been fully briefed, and are ripe for disposition.

## I.      Procedural History & Factual Background

Plaintiffs filed the Amended Complaint on April 22, 2019. At Count I, Mr. Baker asserts claims sounding in negligence against the Defendants. Am. Compl. ¶¶ 12-23, ECF No. 19. Count II asserts claims for loss of consortium on behalf of Mrs. Baker against the Defendants. *Id.* at ¶¶ 24-25. Each of the Defendants in this action has asserted a crossclaim against each of their Co-Defendants seeking contribution and/or indemnity.[1] Answers have been filed with respect to all claims and crossclaims. As three Motions for Summary Judgment are presently at issue, the parties have unsurprisingly filed a number of relevant concise statements of material facts (and responses and replies thereto), briefs, and exhibits. The relevant docket entries for each of the pending summary judgment motions are summarized as follows:

With respect to Gateway's Motion for Summary Judgment, the following relevant docket entries have been filed: (1) Gateway's Motion (ECF No. 108) and attached Exhibits (ECF No. 108-1); (2) a Brief in Support (ECF No. 109); (3) a Concise Statement of Material Facts (ECF No. 110); (4) Range Resources' Response to Gateway's Concise Statement (ECF No. 120); (5) Plaintiffs' Brief in Opposition (ECF No. 126) to Gateway's Motion; (6) Plaintiffs' Response to Gateway's Concise Statement (ECF No. 127); (7) Plaintiffs' Appendix of Exhibits (ECF No. 132); (8) Gateway's Reply (ECF No. 135) to Plaintiffs' Response to Gateway's Concise Statement; (9)

---

[1] Each crossclaim incorporates but does not admit the averments set forth against their Co-Defendants in the Amended Complaint.

Gateway's Reply Brief (ECF No. 136) to Plaintiffs' Brief in Opposition; and (10) Range Resources' Reply (ECF No. 138) to Plaintiffs' Response to Gateway's Concise Statement.

With respect to Paris' Motion for Summary Judgment, the following relevant docket entries have been filed: (1) Paris' Motion (ECF No. 112) and attached Exhibits; (2) a Brief in Support (ECF No. 113); (3) a Concise Statement of Material Facts (ECF No. 114); (4) Guardian's Response to Paris' Concise Statement (ECF No. 118); (5) Range Resources' Response to Paris' Concise Statement (ECF No. 119); (6) Gateway's Response to Paris' Concise Statement (ECF No. 124); (7) Plaintiffs' Brief in Opposition (ECF No. 128) to Paris' Motion; (8) Plaintiffs' Response to Paris' Concise Statement (ECF No. 129); (9) Plaintiffs' Appendix of Exhibits (ECF No. 132); (10) Range Resources' Reply (ECF No. 137) to Plaintiffs' Response to Paris' Concise Statement; (11) Paris' Reply (ECF No. 140) to Plaintiffs' Brief in Opposition; (12) Paris' Reply (ECF No. 141) to Plaintiffs' Response to Paris' Concise Statement; and (13) Paris' Appendix of Exhibits (ECF No. 142).

With respect to Magna's Motion for Summary Judgment, the following relevant docket entries have been filed: (1) Magna's Motion (ECF No. 115) and attached Exhibits; (2) a Brief in Support (ECF No. 116); (3) a Concise Statement of Material Facts (ECF No. 117); (4) Range Resources' Response to Magna's Concise Statement (ECF No. 121); (5) Plaintiffs' Brief in Opposition (ECF No. 130) to Magna's Motion; (6) Plaintiffs' Response to Magna's Concise Statement (ECF No. 131); (7) Plaintiffs' Appendix of Exhibits (ECF No. 132); (8) Guardian's Response to Magna's Concise Statement (ECF No. 133); (9) Guardian's Brief in Opposition (ECF No. 134) to Magna's Motion; and (10) Range Resources' Reply (ECF No. 139) to Plaintiffs' Response to Magna's Concise Statement.

The Court has reviewed each of the submissions set forth above.  Unless otherwise noted, the following facts are not in dispute:[2]

The present case arises out of a single vehicle truck accident that occurred on or about April 22, 2017 in Somerset Township, Washington County, Pennsylvania.  At all times relevant herein, Range Resources was operating a gas well site known as the Rowland Well Pad ("Rowland Well Pad").  At the time of the accident, the Rowland Well Pad was being used as a staging area where water trucks were stored and tested before eventually transporting fracking water to another well site.  The accident at issue occurred on an access road ("Access Road") that connected the Rowland Well Pad to State Route 136.  At the time of the accident, Mr. Baker was operating a loaded water truck for Kenan Advantage Group, Inc., and was driving along the Access Road toward the Rowland Well Pad.  As Mr. Baker was driving along the Access Road during the early and still dark hours of the morning of April 22, 2017, Mr. Baker's vehicle left the Access Road and rolled down an adjoining hillside.  Plaintiffs assert that Mr. Baker suffered severe injuries as a result of the April 22, 2017 accident.

Range Resources contracted with Gateway for Gateway's involvement, in some manner, in the design of the Access Road.[3]  Range Resources contracted with Paris for the construction of the Access Road.  Prior to the April 22, 2017 accident, Range Resources ordered, and United Rentals (North America), Inc. t/d/b/a United Rentals supplied, two light towers for use at the

---

[2] Given the number of concise statements (and responses and replies thereto) at issue in this matter, the Court will omit specific citations for uncontested facts.

[3] Gateway avers that its involvement was limited to preparing an Erosion and Sediment Control Plan for the Access Road in 2015, laying out the location of the Access Road, and preparing preliminary plans in 2010.  Gateway's Concise Statement ¶¶ 9-10, ECF No. 110.  Gateway further avers that it did not prepare construction plans for the Access Road, did not recommend safety features or devices (which it avers are beyond the scope of an Erosion and Sediment Control Plan), and had no role in the actual construction of the Access Road and no role with the Access Road after it was constructed.  *Id.* at ¶¶ 11-14.  Plaintiffs assert that Paris and Range Resources relied on the plans developed by Gateway as construction plans, and that Range Resources relied on Gateway to provide safe road design.  Pls.' Resp. to Gateway's Concise Statement ¶¶ 11-12, ECF No. 127; *see also* Range Resources' Resp. to Gateway's Concise Statement ¶¶ 11-12, ECF No. 120.

Rowland Well Pad.[4]  Range Resources contracted with Guardian to conduct dip testing of water

trucks that arrived at the Rowland Well Pad through the night of April 21-22, 2017.  Guardian set

up and directed at least one of the onsite lights to provide illumination for its testing.  Range

Resources contracted Magna to provide escort services at the Rowland Well Pad, which included,

at least, directing traffic on the Access Road, signing trucks in and out at the Rowland Well Pad,

and communicating with Range to send water and sand trucks to an off-site fracking operation.[5]

On the night in question, Magna directed water truck traffic to and from the Rowland Well Pad

via the Access Road.

> In the Amended Complaint, Plaintiffs assert that:
>
> Carl E. Baker was driving on the Access Road leading from State Route 136 to the
> Rowland Well . . . when he was suddenly blinded by powerful lights directed from
> the Rowland Well toward the [Access Road].  When Mr. Baker was blinded by the
> lights, he braked but in the process of bringing the truck to a stop the right front
> wheel went on to the berm or shoulder of the road which was very soft and the
> adjacent embankment was very steep, the load shifted, the berm or shoulder gave
> way and the truck then went over the embankment and rolled down the hill multiple
> times causing serious, severe and permanent injuries to Carl E. Baker . . . .

Compl. ¶ 19, ECF No. 19.  Plaintiffs aver that each of the Defendants was negligent in failing to

provide and maintain a safe environment for Mr. Baker to operate his water truck.  *Id.* at ¶ 20(g).

---

[4] On December 8, 2020, the Court granted the Motion for Summary Judgment (ECF No. 97) filed by United Rentals,
and further entered judgment in favor of United Rentals with respect to all claims and crossclaims set forth against it.
*See* ECF Nos. 106 and 107.

[5] Plaintiffs aver that Magna had the following additional duties pursuant to its contract with Range Resources:

> Magna also had the lookout and control function . . . to ensure that the vehicles can enter and leave
> Pa. Route 136 safely and to perform a dry run of the route to identify any safety concerns along the
> way, which included a duty to take action with regard to the lights that were blinding drivers and
> ultimately blinding Carl Baker.  Magna had the responsibility to redirect the lights on the light tower
> if they saw or were advised that there is an issue with the way the lights were facing.  Magna had a
> duty to stop work, i.e. stop trucks from coming up the Access Road including Mr. Baker when
> Magna's employees were advised by Mr. Bowers before the accident that the lights from the light
> tower were blinding drivers.  Magna had the ability to stop trucks from coming up the Access Road
> since Magna had a person stationed on each end of the Access Road.

Pls.' Resp. to Magna's Concise Statement ¶ 13, ECF No. 131.

Plaintiffs assert that Range Resources and Guardian were negligent in directing the lights, or allowing the lights to be directed, toward the Access Road in a manner that would negatively impact the vision of drivers using the Access Road.  Compl. ¶ 20(a), ECF No. 19.  Plaintiffs assert that Range Resources, Magna, and Guardian were negligent in failing to warn Mr. Baker that the lights would be directed in such a manner, and further in failing to correct the direction of the lights after the dangerous condition was brought to their attention by water truck operators and others before Mr. Baker's accident occurred .  *Id.* at ¶¶ 20(b)-(c).  Plaintiffs assert that Magna was also negligent because it assumed a duty to provide and maintain a safe environment for the water truck drivers who were involved in the staging operation at the Rowland Well Pad, and because it failed in the performance of that duty.  *Id.* at ¶ 20(e).  Plaintiffs further assert that Guardian undertook a duty to properly direct the lights, and that it failed in that duty.  *Id.* at 20(f).

Plaintiffs aver that Range Resources, Gateway, and Paris negligently constructed the Access Road in that they allowed the berm or shoulder of the road to be unduly narrow and to give way when Mr. Baker's loaded water truck needed to stop on the road with a wheel on the berm or shoulder.  Compl. ¶ 20(h), ECF No. 19.  Plaintiffs further assert that Range Resources, Gateway, and Paris were negligent in failing to design and construct the Access Road: (1) with elevated berms, barriers, guardrails, or other protection for the water trucks, *id.* at ¶ 20(i); (2) with flexible post style or post mounted delineators or other types of signs or reflective markers to identify the edges of the Access Road for vehicle operators, *id.* at ¶ 20(j); and (3) at a safe width in the curve and leading up to the curve where the accident occurred, *id.* at ¶ 20(k).

## II.    Legal Standard

Summary judgment may be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted.  Fed. R. Civ. P.

56(a).  Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party.  *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998).

The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment.  Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment.  *Liberty Lobby*, 477 U.S. at 248.  The Supreme Court of the United States has explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex*, 477 U.S. at 322–23.  Further, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 256.

### III.   Discussion

The moving Defendants assert that Plaintiffs fail to make a showing sufficient to establish the existence of an element essential to the Plaintiffs' claims on which Plaintiffs will bear the burden of proof at trial.  Specifically, each of the moving Defendants argues that the facts in this case, as developed in discovery, are not sufficient to support Plaintiffs' negligence claims against the moving Defendants.  If the Court were to find that the Moving Defendants are entitled to summary judgment on Mr. Baker's negligence claims, neither Plaintiffs' loss of consortium claim nor Co-Defendants' crossclaims seeking contribution and/or indemnity, each of which relies on Plaintiffs' negligence claims, would be viable at this time.

Under Pennsylvania law, a plaintiff asserting a claim for negligence bears the burden of proving: "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages."  *Estate of Swift v. Ne. Hosp. of Philadelphia*, 690 A.2d 719, 722 (Pa. Super. 1997) (citing *Pittsburgh National Bank v. Perr*, 431 Pa.Super. 580, 584, 637 A.2d 334, 336 (1994)).  "The existence of a duty is a question of law for the court to decide."  *Straw v. Fair*, 187 A.3d 966, 983 (Pa. Super. 2018) (quoting *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005)).  "To establish the causation element in a negligence claim, a plaintiff must allege that the defendant's breach of his legal duty was both the proximate and actual cause of injury."  *Lopez v. CSX Transportation, Inc.*, 269 F. Supp. 3d 668, 673 (W.D. Pa. 2017) (quoting *McCullough v. Peeples*, No. CIV.A. 3:14-123, 2015 WL

1000223, at *3 (W.D. Pa. 2015)).  "Actual causation is present when the alleged injury would not

have occurred but for a certain act or presence of a condition . . . while proximate causation requires

that the defendant's wrongful act be a substantial factor in bringing about the plaintiff's harm."

*Lopez*, 269 F. Supp. 3d at 673 (quoting *Andrews v. Fullington Trail Ways, LLC*, No. CV 3:15-228,

2016 WL 3748579, at *5 (W.D. Pa. 2016)).

"A proximate, or legal cause, is defined as a substantial contributing factor in bringing

about the harm in question.  Although there can be more than one proximate cause, all factual (but

for) causes are not necessarily proximate causes."  *Van Buskirk v. Carey Canadian Mines, Ltd.*,

760 F.2d 481, 492 (3d Cir. 1985) (citation omitted).  The United States District Court for the

Eastern District of Pennsylvania has explained:

> The following considerations are deemed important under the Restatement's
> "substantial factor" test to determine proximate cause: (1) the number of factors
> other than the actor's conduct that contributed to producing the harm and the extent
> of their contribution; (2) whether the actor's conduct created a force or series of
> forces that were in continuous and active operation up to the time of the harm, or
> created a situation harmless unless acted upon by other forces for which the actor
> is not responsible; and (3) the lapse of time between the actor's conduct and the
> harm.

*Heeter v. Honeywell Int'l, Inc.*, 195 F. Supp. 3d 753, 759 (E.D. Pa. 2016), *aff'd sub nom. Heeter*

*v. Honeywell Int'l Inc.*, 706 F. App'x 63 (3d Cir. 2017).  "[Q]uestions of proximate cause are

typically reserved for the jury."  *Lopez*, 269 F. Supp. 3d at 673 (quoting *Vanesko v. Marina Dist.*

*Dev. Co., LLC*, 38 F.Supp.3d 535, 543 (E.D. Pa. 2014)); *see also David v. Broadway Maint. Corp.*,

451 F. Supp. 877, 882 (E.D. Pa. 1978) ("Although a jury might well reach the contrary conclusion

on either or both of these issues, that is plainly no warrant for resolving the proximate cause issue

as a matter of law.  So long as a jury reasonably could find that the defendant's conduct

proximately caused the plaintiff's injuries, the plaintiff is entitled to a jury determination on that

issue."). A court may determine proximate cause as a matter of law where it finds that a jury could not reasonably differ on the issue. *Lopez*, 269 F. Supp. 3d at 674.

### A. Gateway's Motion

Plaintiffs' negligence claims against Gateway stem from the design process for the Access Road. As noted above, Plaintiffs aver that Range Resources, Gateway, and Paris negligently constructed the Access Road in that they allowed the berm or shoulder of the road to be unduly narrow and to give way when Mr. Baker's loaded water truck needed to stop on the road with a wheel on the berm or shoulder. Compl. ¶ 20(h), ECF No. 19. Plaintiffs further assert that Range Resources, Gateway, and Paris were negligent in failing to design and construct the Access Road: (1) with elevated berms, barriers, guardrails, or other protection for the water trucks, *id.* at ¶ 20(i); (2) with flexible post style or post mounted delineators or other types of signs or reflective markers to identify the edges of the Access Road for vehicle operators, *id.* at ¶ 20(j); and (3) at a safe width in the curve and leading up to the curve where the accident occurred, *id.* at ¶ 20(k).

Gateway argues that Plaintiffs' negligence claims against Gateway fail because: (1) Plaintiffs cannot establish that Gateway owed a duty to Plaintiffs, Gateway's Br. in Supp. 6, ECF No. 109; and/or (2) Plaintiffs cannot establish causation with respect to Gateway's conduct and Mr. Baker's injuries, *id.* at 9. Gateway asserts that its involvement in the creation of the Access Road was limited to laying out the location of the Access Road and to creating an Erosion and Sediment Control Plan. *Id.* at 7. Gateway avers that the Erosion and Sediment Control Plan did not constitute a detailed road construction plan or a detailed site plan, was not meant to be used for construction, and did not include safety devices because safety devices were beyond the scope of the Erosion and Sediment Control Plan. *Id.* Gateway argues that it had no duty, within the

scope of the work associated with the creation of the Access Road, to provide any design for safety devices or protective measures. *Id.* at 8.

Gateway further argues that Plaintiffs' expert's reliance on the federal regulations and standards for the mining industry with respect to the design and construction of haul roadways is unfounded and does not confer a duty on Gateway because such guidelines do not apply to the oil and gas industry.[6]   Gateway's Br. in Supp. 9, ECF No. 109.   Gateway also argues that there is no evidence that the Access Road, as designed as a one lane, one-way road, was too narrow.   *Id.*[7] With respect to causation, Gateway argues that the blinding lights, and not the manner in which the Access Road was designed or constructed, were the sole cause Mr. Baker's accident and resultant injuries. *Id.* at 9-12.   Because it is uncontested that Gateway had no involvement with the placement of the lights, Gateway argues that Plaintiffs cannot establish that any action undertaken by Gateway actually or proximately caused Mr. Baker's accident.   *Id.*

In opposing Gateway's Motion for Summary Judgment, Plaintiffs argue that Gateway assumed a contractual and social duty to provide a safe design for the Access Road to Range Resources, and that Range Resources and Paris relied on Gateway for a safely designed road.   Br. in Opp'n to Gateway's Mot. 6-7, ECF No. 126.   Plaintiffs further argue that Gateway was aware that the Access Road would be used by truck operators such as Mr. Baker, and that it was thus foreseeable that negligent road design could result in injury to a truck driver such as Mr. Baker. *Id.* at 7-8.   Plaintiffs aver that Gateway's design for the Access Road failed to include adequate safety measures, and further aver that Gateway thus failed in its duty to provide a safe design for

---

[6] These standards and regulations are promulgated under the Mine Safety and Health Act ("MSHA").   *See* Paris' Br. in Supp. 10, ECF No. 113.

[7] The Court notes that, while not explicitly characterized as such, these arguments also tend to assert that Plaintiffs cannot establish a breach of any duty owed to Plaintiffs, i.e. if Gateway owed a duty to design a safe road, it did not violate that duty because it was not required to adhere to "mining industry's standards" and because there is no evidence that the Access Road, as designed, was too narrow.

the Access Road, and that the same was a proximate cause of Mr. Baker's accident and injuries. *Id.* at 8-11.

Initially, with respect to Gateway's assertion that it owed no duty to the truck operators who would eventually utilize the Access Road because of its limited involvement in the design process, the Court notes that the record is far from clear that Gateway's role in the creation of the Access Road was as limited as Gateway asserts.[8]  It is undisputed that Gateway provided designs for the Access Road, some of which were not labeled as Erosion and Sediment Control Plans, at the request of Range Resources.  Pls.' Resp. to Gateway's Concise Statement ¶¶ 45-55, ECF No. 127; Gateway's Resp. to Pls.' Resp ¶¶ 45-55, ECF No. 135.  Range Resources and Gateway had a contractual relationship for Gateway's provision of "civil engineering services" generally, without specific reference to the Rowland Well Pad and without limiting the same to the creation of Erosion and Sediment Control Plans.  *Id.*

Range Resources provided Gateway with only two specifications for the Access Road, namely a maximum allowable road slope of 13 percent and a road width of 16 feet, with a 4-foot shoulder on each side.  *Id.* at ¶ 46.  Gateway's designs included the layout for the Access Road, which stretched from the entrance on State Route 136 to the Rowland Well Pad itself, as well as the width, length, grading, curvature, and slope of the Access Road.  Paris' Concise Statement ¶¶ 15-17, ECF No. 114; Gateway's Resp. to Paris' Concise Statement ¶¶ 15-17, ECF No. 124.  Range Resources has asserted that Gateway was responsible for the safe design of the Access Road.  Pls.' Resp. to Gateway's Concise Statement ¶ 45, ECF No. 127; Gateway's Resp. to Pls.' Resp ¶ 45, ECF No. 135.  Further, Paris used Gateway's design in constructing the Access Road, Paris relied on Gateway's designs for the Access Road for road safety requirements, Pls.' Resp. to Gateway's

---

[8] *See* Eck Report 25, ECF No. 132-3 (Plaintiffs' expert noting that "[t]he deposition testimony was noteworthy in that it was apparent that no one took responsibility for safety in the design and construction of this access road.").

Concise Statement ¶¶ 59-60, ECF No. 127; Gateway's Resp. to Pls.' Resp ¶ 59-60, ECF No. 135; Paris' Concise Statement ¶¶ 23-24, ECF No. 114, and there is no evidence of record as to any designs or plans submitted by any entity other than Gateway.  Gateway represented that it would not design a road that it felt was unsafe if the road were to be built according to Gateway's design, and Gateway knew that the Access Road would be used by trucks and truck drivers.  Pls.' Resp. to Gateway's Concise Statement ¶¶ 54-55, ECF No. 127; Gateway's Resp. to Pls.' Resp ¶¶ 54-55, ECF No. 135.

In *Farabaugh v. Pennsylvania Tpk. Comm'n*, 911 A.2d 1264 (Pa. 2006), the Supreme Court of Pennsylvania explained:

> Plaintiff noted that Pennsylvania courts have imposed a legal duty, sometimes referred to as a social duty, on contracting parties to perform their contractual obligations so as not to injure third parties, citing *Evans v. Otis Elevator Co.*, 403 Pa. 13, 168 A.2d 573 (1961).  Under this caselaw, a plaintiff may bring a cause of action sounding in tort based upon a defendant's negligent performance of contractual obligations owed to another party.  Plaintiff notes that the principal established in *Otis Elevator* has been formalized in Section 324A of the Restatement (Second) of Torts.

*Farabaugh*, 911 A.2d at 1277–78.  Section 324A of the Restatement (Second) of Torts provides:

> § 324A. Liability to Third Person for Negligent Performance of Undertaking

> > One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

> > (a) his failure to exercise reasonable care increases the risk of such harm, or

> > (b) he has undertaken to perform a duty owed by the other to the third person, or

> > (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

13

RESTATEMENT (SECOND) OF TORTS § 324A.

In *Farabaugh*, the Supreme Court of Pennsylvania further explained:

It has long been the law of this Commonwealth that a contracting party may owe a duty, imposed by law and society, to perform its contractual obligations in such a manner as to avoid injury to third parties:

> Generally, a party to a contract does not become liable for a breach thereof to one who is not a party thereto.  However, a party to a contract by the very nature of his contractual undertaking may place himself in such a position that the law will impose upon him a duty to perform his contractual undertaking in such manner that third persons—strangers to the contract—will not be injured thereby; Prosser, Torts (2nd ed.1955), § 85, pp. 514–519.  It is not the contract *per se* which creates the duty; it is the law which imposes the duty because of the nature of the undertaking in the contract.

*Otis Elevator*, 168 A.2d at 575

*Farabaugh*, 911 A.2d at 1283; *see also St. Clair v. B & L Paving Co.*, 411 A.2d 525, 526 (Pa. Super. 1979) ("Those who undertake an activity pursuant to a contract have both a self-imposed contractual duty and a 'social' duty imposed by the law to act without negligence.  This social duty extends to persons who, although strangers to the contract, are 'within the for[e]seeable orbit of risk of harm.'" (citations omitted)).

As indicated by the record presently before the Court, Gateway, pursuant to its contractual relationship with Range Resources, was the only entity to provide design plans for the Access Road.  In preparing design plans, Gateway clearly assumed a social duty with respect to the truck operators who would eventually utilize the Access Road, as such operators were within the foreseeable orbit of increased risk of harm in the event that Gateway failed to exercise reasonable care in providing designs for the Access Road.  Gateway's duty in this context is clear, and that

was to provide a non-negligent design for the Access Road.[9]  Plaintiffs' assertion that Gateway was negligent in failing to design the Access Road at a safe width in the curve and leading up to the curve where the accident occurred clearly implicates this duty.  Further, with respect to whether Gateway's designs were required to include safety measures or devices such as guardrails, berms, or delineation, the same goes to the issue of whether Gateway breached its duty and cannot be resolved at this juncture.  *See Farabaugh*, 911 A.2d at 1282 ("It would not be appropriate, however, for us to determine exactly what Trumbull was expected to do to comply with the responsibilities it assumed.  Indeed, we believe the inquiry regarding what level of review and inspection the parties intended should be left to the factfinder who will have the opportunity to consider the testimony of the parties and the parties' experts.").  Gateway may ultimately establish that its designs did not need to include such safety measures in this context, that some other entity bore the responsibility for the proposal of such features, or that some other party's reliance on its designs was not reasonable or appropriate.  The record before the Court does not, however, establish the absence of a duty on the part of Gateway.

With respect to Gateway's argument that the placement/direction of the lights, and not the design or construction of the Access Road, was the sole cause of Mr. Baker's accident and resultant injuries, the Court notes that "questions of proximate cause are typically reserved for the jury." *Lopez*, 269 F. Supp. 3d at 673 (quoting *Vanesko*, 38 F.Supp.3d at 543).  Further, there can be more

---

[9] It is in this manner that Gateway's (and Paris') argument that the MSHA does not apply to the oil in gas industry is misplaced.  The Court agrees that the MSHA does not itself impose a duty upon entities building haul roads in the oil and gas industry.  The Eck Report, however, explains that OSHA, which at least Paris asserts controls in this context, does not speak to the design or construction of roads.  *See* Eck Report 27, ECF No. 132-3 ("However, with respect to roads, the only thing OSHA addresses is safety of employees working near roads, i.e., temporary traffic control.  OSHA does not address road design or operations.").  Dr. Eck's citation to the MSHA references what he believes to be appropriate safety measures for haul road design/construction.  The Court makes no finding that the scope of the duty owed by Gateway required it to comply with the MSHA.  Rather, Gateway had a duty to design the Access Road in a non-negligent manner.  Whether Gateway breached that duty by failing to include safety measures in the designs it prepared is an issue that the Court cannot resolve on the record presently before it.

than one proximate cause of an injury.  *Van Buskirk*, 760 F.2d at 492.   In asserting its argument

on causation, Gateway relies primarily on Mr. Baker's deposition testimony that he had not

previously had issues traversing the Access Road and the following excerpt from Mr. Baker's

deposition testimony: "Yes, I was blinded.   I couldn't see where I was going and that's why I had

the accident.  If I could see where I was going I would not have gotten into that predicament."  Br.

in Supp. 10-12, ECF No. 109.  In support of its assertion that the lights were the sole cause of Mr.

Baker's accident, Gateway also cites to the Expert Reports authored by Ronald W. Eck, P.E.,

Ph.D., a Professor Emeritus of Civil Engineering who specializes in transportation engineering,

and Wendell R. Cover, an Accident Reconstructionist, submitted by Plaintiffs (ECF Nos. 132-3

and 132-6).

The Court finds that the issue of causation cannot be resolved by the Court at this juncture,

as there are clearly disputes of material fact as to whether the design, and, for that matter, the

construction, of the Access Road was a proximate cause of Mr. Baker's accident and resultant

injuries.  Mr. Baker has stated that the positioning of the lights contributed to his accident, and the

Expert Reports submitted by Plaintiffs support such an assertion.  The Eck Report, however, also

provides:

> The deceptive roadway alignment in combination with the sharp curvature at the
> crest of a hill on a narrow roadway exacerbated the hazards posed by the glare from
> the improperly inspected and maintained lights and meant that there was no margin
> for error in terms of truck operations.  Leaving the traveled way by just a small
> distance placed the right tires of the Baker truck on soft material such that the rig
> became unstable and overturned and rolled down the hillside.

Eck Report 29, ECF No. 132-3.  It goes on to state:

> The improper roadway design and construction in combination with the failure to
> provide clear and positive direction to drivers at the same time they were
> transitioning to the well pad created the potential for roadway departure crashes
> like the one which occurred here.  The improperly aimed lights blinding drivers on
> a roadway with increasingly sharp curvature on a narrow road without delineation

created a hazard that vehicle operators could not reasonably be expected to recognize.

*Id.* at 30.  The Cover Report provides:

The edge drop-off, soft roadside, steep negative side slope and the lack of a protective safety barrier was a substantial factor in causing the rollover and subsequent injuries to Mr. Baker.

Cover Report 15, ECF No. 132-6.

The Expert Reports certainly do not establish, as Gateway suggests, that the positioning of the lights at issue was the sole cause of Mr. Baker's accident and injuries.  The Court finds that Plaintiffs have submitted sufficient evidence such that a jury, if it finds such evidence credible, could find that the design of the Access Road actually and proximately caused Mr. Baker's accident and injuries.  Gateway may introduce evidence and argument to the contrary, but its cursory attempt, at this juncture, to establish that the lights were the sole cause of Mr. Baker's accident is simply not sufficiently supported, and the issue of proximate causation in this case cannot be resolved at the summary judgment stage.  For the reasons discussed above, the Court will deny Gateway's Motion for Summary Judgment.

**B.  Paris' Motion**

Plaintiffs assert the same bases for negligence against Paris as those discussed above with respect to Gateway, except that the same relate to the construction of the Access Road.  Namely, Plaintiffs aver that Paris, along with Range Resources and Gateway, negligently constructed the Access Road in that it allowed the berm or shoulder of the road to be unduly narrow and to give way when Mr. Baker's loaded water truck needed to stop on the road with a wheel on the berm or shoulder.  Compl. ¶ 20(h), ECF No. 19.  Plaintiffs further assert that Paris was negligent in failing to design and construct the Access Road: (1) with elevated berms, barriers, guardrails, or other protection for the water trucks, *id.* at ¶ 20(i); (2) with flexible post style or post mounted delineators

or other types of signs or reflective markers to identify the edges of the Access Road for vehicle operators, *id.* at ¶ 20(j); and (3) at a safe width in the curve and leading up to the curve where the accident occurred, *id.* at ¶ 20(k).

Paris asserts that it is entitled to summary judgment on the following bases: (1) the *Spearin* doctrine entitles it to summary judgment because Paris constructed the access road per plans and specifications created by Gateway at the request of Range Resources; (2) the regulations promulgated under the MSHA and cited by Plaintiffs as conferring a duty on Paris to construct berms or guiderails do not apply, nor are they legally binding, in the oil and gas industry, and Paris thus had no duty to construct berms or guiderails under the MSHA;[10] and (3) the record evidence establishes that Mr. Baker's accident was caused solely by the blinding lights, and not defects in the Access Road, and that Plaintiffs have not proven and cannot prove that any act or omission attributable to Paris caused Mr. Baker's accident and related injuries. Paris' Br. in Supp. 3, ECF No. 113. In opposing Paris' Motion for Summary Judgment, Plaintiffs argue that Paris, in constructing the Access Road, failed to adhere to the specifications and designs of the Access Road, Br. in Opp'n to Paris' Mot. 10, ECF No. 128, and further argues that Paris, through its contract with Range Resources, accepted responsibility for the safe construction of the Access Road, and its failure in that duty was a proximate cause of Mr. Baker's accident and injuries, *id.* at 12.

With respect to its argument that the *Spearin* doctrine entitles it to summary judgment, Paris argues that it is uncontested that Range Resources contracted with Gateway to design the Access Road, that Gateway created design plans, and that Range Resources, in turn, provided those plans to Paris. Paris' Br. in Supp. 9, ECF No. 113. Paris avers that it complied with all

---

[10] As noted above, Paris argues that OSHA regulations control in this context. Paris' Br. in Supp. 11, ECF No. 113.

specifications contained in the plans, including with respect to the width, general contour, and curvature of the Access Road, and that such plans did not call for the installation of guiderails, raised berms, or any other such barrier.  *Id*.  Paris argues that it thus constructed the access road "in accordance with owner-issued design specifications," and that the Court should grant summary judgment in its favor.  *Id*.

> The United States Court of Appeals for the Third Circuit has explained:
>
> In *Spearin*, the [Supreme] Court held that a contractor is not liable for the consequences of defects in specifications provided by the owner.  [*United States v. Spearin*, 248 U.S. 132, 136, 39 S.Ct. 59, 61 (1918)].  The Court explained that by prescribing the character, dimensions and location of the work to be done, the owner "imported a warranty that, if the specifications were complied with, the [work] would be adequate."  *Id.* at 137, 39 S.Ct. at 61.  This implied warranty, the Court noted, is not overcome by general clauses requiring the contractor to visit the site, review plans, or to assume responsibility for the work until completion and acceptance.  *Id.*  Pennsylvania law is in accord.  *Pennsylvania Dep't of Transp. v. W.P. Dickerson & Son, Inc.*, 42 Pa.Cmwlth. 359, 400 A.2d 930, 932 (1979).

*Rhone Poulenc Rorer Pharms. Inc. v. Newman Glass Works*, 112 F.3d 695, 697 (3d Cir. 1997).  Under the Spearin doctrine, "a contractor is generally not liable for simply performing work in accordance with owner-issued design specifications."  *Equitrans Servs., LLC v. Precision Pipeline, LLC*, 154 F. Supp. 3d 189, 201 (W.D. Pa. 2015) (citing *A.G. Cullen Construction, Inc. v. State System of Higher Education*, 898 A.2d 1145, 1156–57 (Pa. Commw. Ct. 2006)).  "Design specifications 'describe in precise detail the materials to be employed and the manner in which the work is to be performed.  The contractor has no discretion to deviate from the specifications, but is required to follow them as one would a road map.'"  *Id*. (quoting *A.G. Cullen*, 898 A.2d at 1156).

Paris' *Spearin* argument can be rejected on the basis that there is evidence of record that Paris failed to construct the Access Road in accordance with the design specifications of Range Resources and Gateway.   Specifically, there is evidence that the Access Road was not constructed at a width of 16 feet with a 4-foot shoulder on each side, and that the curvature in the Access Road,

as constructed, was not in accordance with the design plans.  Pls.' Resp. to Gateway's Concise Statement ¶¶ 74-86, ECF No. 129; Paris' Resp. to Pls.' Resp ¶¶ 72-86, ECF No. 141.  While Paris takes issue with such evidence, the Court's function at this juncture is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party.  The Court finds that the facts and evidence of record, when construed in a light most favorable to Plaintiffs, is sufficient to survive summary judgment on the issue of the *Spearin* doctrine.  Quite simply, the record is far from clear on whether Paris complied with the design specifications of Range Resources and Gateway, and the Court finds that Paris is not entitled to summary judgment under the *Spearin* doctrine.

With respect to Paris' argument that it owed no duty to truck operators such as Mr. Baker, the Court finds the Superior Court of Pennsylvania's decision in *St. Clair v. B & L Paving Co.* to be instructive.  In *St. Clair*, the Superior Court explained: "our courts impose a duty 'on any person who on behalf of the possessor of Land negligently creates an artificial condition resulting in injury to others; and this, regardless of whether the contractor has surrendered possession of the land and his work has been accepted.'"  *St. Clair*, 411 A.2d at 526 (quoting *Prost v. Caldwell Store, Inc.*, 187 A.2d 273 (Pa. 1963)).  The *St. Clair* court ultimately held:

> Appellees in this case, as in [*Hajel v. Burrel Construction & Supply Co.*, 122 P.L.J. 82, *Aff'd per curiam*, 228 Pa.Super. 792, 315 A.2d 278 (1974)], entered onto land possessed by the Commonwealth and performed a road resurfacing contract, leaving the road surface dangerously elevated above the berm.  They therefore owed a duty to third persons over and above compliance with the contract provisions despite the fact that they had properly performed the contract and their performance had been accepted.  The duty owed by the Commonwealth to the motoring public does not eliminate the duty owed by appellees.  Whether appellees breached their duty is a question for the finder of fact.

20

*Id.* at 527; *see also id.* at 526 ("Those who undertake an activity pursuant to a contract have both a self-imposed contractual duty and a 'social' duty imposed by the law to act without negligence. This social duty extends to persons who, although strangers to the contract, are 'within the for[e]seeable orbit of risk of harm.'" (citations omitted)).

The record before the Court indicates that Paris entered onto land leased by Range Resources to construct the Access Road pursuant to its contract with Range Resources. Paris accordingly owed a social duty to construct the Access Road without negligence, and that duty extended to truck operators, such as Mr. Baker, who would eventually utilize the Access Road, as such individuals were clearly within the foreseeable orbit of risk of harm if the Access Road were to be negligently constructed.[11] Construing the facts in a light most favorable to Plaintiffs, the Court finds that there is evidence of record that, if found to be credible, may support a finding that the Access Road was negligently constructed. *See* Eck Report 29-30, ECF No. 132-3; Cover Report 15, ECF No. 132-6. Paris may ultimately be successful in establishing that it was not negligent in constructing the Access Road (or that it should not be held liable for another reason), but the Court finds that Paris owed Mr. Baker a duty to act without negligence, and rejects Paris' argument to the contrary.

For the same reasons discussed above with respect to Gateway's Motion, the Court rejects Paris' argument that the Court should, at this juncture, find that the placement/direction of the lights was the sole cause of Mr. Baker's accident and injuries. Plaintiffs have submitted sufficient evidence such that a jury, if it finds such evidence credible, could find that the design and construction of the Access Road actually and proximately caused Mr. Baker's accident and

---

[11] On this basis, the Court rejects Paris' argument respecting whether Mr. Baker was a third-party beneficiary entitled to recover under the contract between Range Resources and Paris as irrelevant. Paris owed a contractual duty to Range Resources, and owed a "'social' duty imposed by the law to act without negligence" to Mr. Baker. *St. Clair*, 411 A.2d at 526.

injuries.  Proximate cause is, in this case, a question for the jury, and the Court rejects Paris'
argument to the contrary.  Further, the Court rejects Paris' arguments respecting Dr. Eck's citation
to the MSHA for the same reasons discussed above in footnote 9.  Paris owed a duty to construct
the Access Road in a non-negligent manner.  Whether it breached that duty by constructing the
road in the manner that it did, or by failing to include certain safety measures, is an issue that the
Court cannot resolve on the record before it.  For the reasons discussed above, the Court will deny
Paris' Motion for Summary Judgment.

### C.  Magna's Motion

Plaintiffs' negligence claims against Magna arise from Magna's inaction with respect to
the purportedly dangerous condition created by light towers that impaired Mr. Baker's vision as
he drove along the Access Road on the night of his accident.  Plaintiffs assert that Range Resources
and Guardian were negligent in directing the lights, or allowing the lights to be directed, toward
the Access Road in a manner that would negatively impact the vision of drivers using the Access
Road.  Compl. ¶ 20(a), ECF No. 19.  Plaintiffs assert that Range Resources, Magna, and Guardian
were negligent in failing to warn Mr. Baker that the lights would be directed in such a manner, and
further in failing to correct the direction of the lights after the dangerous condition was brought to
their attention by water truck operators and others before Mr. Baker's accident occurred .  *Id.* at ¶¶
20(b)-(c).  Plaintiffs assert that Magna, as the company which ran the Staging Operation at the
Rowland Well Pad and Access Road, assumed a duty to provide and maintain a safe environment
for the water truck drivers who were involved in the staging operation at the Rowland Well Pad,
and was negligent because it failed in the performance of that duty.  *Id.* at ¶ 20(e).

Magna's Motion for Summary Judgment relies on an assertion that its limited function with
respect to the Rowland Well Pad, specifically the provision of escort services in support of the

staging operation being conducted by Range Resources, establishes that Plaintiffs cannot prove that any action or inaction on Magna's part caused Mr. Baker's accident or injuries. Magna's Br. in Supp. 2, ECF No. 116. Magna avers that it was not involved in the design or construction of the Access Road, and that it was not involved in the placement, setup, and/or direction of the light towers on the Rowland Well Pad, including the adjustment of the light towers to shine in any particular direction. *Id*. Magna thus argues that Plaintiffs cannot establish causation with respect to Magna, and that summary judgment in Magna's favor is thus warranted. Magna also argues that it had no duty to warn Mr. Baker that the light towers would be directed in a manner that would impair Mr. Baker's vision, and that, in any event, such a failure was not the cause of Mr. Baker's accident or injuries. *Id.* at 12-14.

Plaintiffs argue that it is uncontested that Magna contracted with Range to provide escort services at the Rowland Well Pad, which included directing traffic on the Access Road. Br. in Opp'n to Magna's Mot. 7, ECF No. 130. Plaintiffs assert that Magna's corporate designee and CEO, Todd Bauer, explained that Magna provided a "lookout and control function . . . to ensure that the vehicles can enter and leave Pa. Route 136 safely." *Id.* (quoting Bauer Dep. 18:3-19:5; ECF No. 132-10 at 3). Plaintiffs argue that Magna had a duty to maintain the safety of the truck operators utilizing the Access Road, and that Magna, having assumed such a duty, was obligated to inspect the Access Road and Rowland Well Pad so as to be aware of any safety issues, and to resolve the same. *Id.* at 8. Plaintiffs further argue that Magna breached this duty by failing to identify and correct the hazard created by the misdirected lights. *Id.* at 9-10. Plaintiffs also assert that Magna had been informed of the hazard presented by the lights prior to Mr. Baker's accident. Plaintiffs assert that, despite Magna having the ability to "stop work" at the Rowland Well Pad, the responsibility to redirect the lights as needed at the Rowland Well Pad, and control over truck

operators' access to the Access Road, Magna failed to correct the direction of the lights, failed to stop drivers from utilizing the Access Road while the dangerous condition was present, and failed warn Mr. Baker of the danger presented by the lights and instead permitted him to utilize the Access Road in spite of the dangerous condition posed by the lights. *Id.* at 10. Plaintiffs assert that the same also constitutes a breach of Magna's duty to maintain the safety of the truck operators utilizing the Access Road. *Id.*

Guardian also filed a Brief in Opposition to Magna's Motion. While Guardian takes issue with the quality of Plaintiffs' evidence and Plaintiffs' ultimate chances of succeeding on their claims at trial, Guardian argues that "the present record does contain evidence that Plaintiffs may submit, which in the unlikely event found credible, could result in a verdict against any or all of the above-mentioned defendants, including the moving party, Magna." Guardian's Br. in Opp'n to Magna's Mot. 1-2, ECF No. 134. Guardian asserts that Magna had the ability and the authority to interact with the lights at issue if a safety concern arose on the worksite, that Magna further had "stop work" authority in the event of notice of a safety concern, and that Magna also acknowledged in its Brief in Support that "that there was a protocol if a safety concern was brought up to a Magna employee on the site, which was a call to the Magna supervisor, who would contact Range." *Id.* at 3-8. Guardian avers that there is evidence of record that Magna received notice of the dangerous condition posed by the lights prior to Mr. Baker's accident and that Magna had the ability, and was expected, to address the condition when it was brought to Magna's attention, and further argues that the same precludes summary judgment in Magna's favor. *Id.* at 5-7. Guardian explains:

> Magna's argument that it had no duty to warn of a dangerous condition is also without merit and is belied by the acknowledged step required if such a safety concern is located. Every deponent who was asked agreed that any contractor or truck driver on the site had "stop work" authority in the event of notice of a

> dangerous condition.  If Magna was notified of such a condition and did nothing, a possibility raised by the deposition of at least Mr. Paul, it would bear potential liability, defeating a motion for summary judgment brought based on the absence of factual issues.

*Id.* at 7-8.

The Court agrees that genuine issues of material fact preclude summary judgment in Magna's favor at this juncture.  Plaintiffs' assertions of negligence against Magna do not rely on any purported participation in the design and/or construction of the Access Road, nor on the initial placement and setup of the lights at issue.  Accordingly, the Court need not address Magna's arguments respecting the same.  Plaintiffs assert that Magna became aware of a dangerous condition on the Rowland Well Pad, namely the potential for visual impairment of truck operators utilizing the Access Road caused by the position and direction of light towers on the Rowland Well Pad, and failed to take any action to correct this condition or warn Mr. Baker of the same.  The issue presented herein is, thus, whether Magna owed a duty to act, whether by warning Mr. Baker, redirecting the lights, notifying Range, or "stopping work" at the Rowland Well Pad, upon notice of a dangerous condition such as the position of the light towers.

The record, not to mention Magna's own Brief in Support, *see* Magna's Br. in Supp. 5; 11, ECF No. 116, sets forth evidence that supports a finding that Magna had the ability to, and was further expected to, take at least some action upon notice of a dangerous condition such as lights causing visual impairment of truck operators who drove along the Access Road.  *See* Harvey Dep. 58:2-59:7, ECF No. 115-5 at 9-10 (Magna employee testifying that, if he had been informed of an issue such as lights causing visual impairment for truck operators, he would have contacted his supervisor to initiate the process of addressing the problem); *see also* Harvey Dep. 150:4-15, ECF No. 132-5 at 10 (same Magna employee testifying that he had "stop work" authority, meaning that he could stop a job at any time with no repercussions from Range Resources); Dockum Dep. 52:4-

17, ECF No. 132-17 at 3 (Range Resource supervisor explaining, when asked the duties of an escort services provider where lights impact truck drivers' vision, that "[t]he companies working on location overall [have] the ability to adjust the lights as needed to help the operation."); *id.* at 62:25-63:25 (explaining that "stop work" authority means that anyone on the worksite, if "they feel unsafe at any given moment, they can immediately stop work."); Welker Dep. 139:12-23, ECF No. 132-15 at 9 (Range Resources employee explaining that Magna employees were responsible for redirecting lights if they noticed that there was an issue with the way the light is facing).

It is further clear that Magna undertook responsibility for, and control of, traffic along the Access Road, including ensuring, at least to some degree, that water truck operators such as Mr. Baker could safely enter the Rowland Well Pad via the Access Road. *See* Bauer Dep. 18:3-19:5; ECF No. 132-10 at 3 (explaining that the "lookout and control function" provided by Magna involved ensuring "that the vehicles can enter and leave Pa. Route 136 safely."). Accordingly, Magna contracted with Range Resources to provide escort services at the Rowland Well Pad, which included directing traffic on the Access Road. The same involved ensuring "that the vehicles can enter and leave Pa. Route 136 safely." Magna offered to provide these services to Range Resources, and it was foreseeable that a failure to properly perform the role that Magna assumed under its contract with Range Resources could result in injuries to the truck operators utilizing the Access Road. The Court finds that Magna undertook the active role of directing traffic on the Access Road, and that it assumed the duty to perform these functions in a non-negligent manner. *See Farabaugh*, 911 A.2d at 1282. It is in this role that Magna owed at least some duty to truck operators utilizing the Access Road.[12] The Court agrees with Guardian that Magna

---

[12] While the Court finds that Magna owed a duty to truck operators, it leaves the ultimate determination as to the scope of that duty, and whether the same was breached, to the factfinder. *See Farabaugh*, 911 A.2d at 1282 ("It would not be appropriate, however, for us to determine exactly what Trumbull was expected to do to comply with the

essentially acknowledges as much in its Brief in Support by asserting that there existed a protocol if a safety concern was brought to the attention of a Magna employee on the Rowling Well Pad, which was to call the Magna supervisor, who would in turn contact Range Resources.  *See* Guardian's Br. in Opp'n to Magna's Mot. 1-2, ECF No. 134 (citing Magna's Br. in Supp. 5; 11, ECF No. 116).  The Court rejects Magna's argument that Magna owed no duty whatsoever to truck operators, such as Mr. Baker, who traveled along the Access Road under the factual scenario presented in this action.

There is also evidence of record that could, if found to be credible, support a finding that Magna was made aware of the dangerous condition presented by the lights prior to Mr. Baker's accident.  *See* Bowers Dep.  22:2-25, ECF No. 132-16 at 3 (water truck operator who drove along the Access Road the night before Mr. Baker's accident testifying that he informed a Magna employee that the lights shining on the Access Road were blinding, and was told by the Magna employee that the issue would be addressed); *see also* Paul Dep. 65:24-68:15;123:5-124:25, ECF No. 133-6 at 7-9.  Further, whether the risk posed by the lights was open and obvious clearly presents an issue of fact that this Court cannot resolve at this time, as does the issue of whether the failure to warn Mr. Baker, or for that matter, the failure to issue a directive to "stop work" or otherwise address the purported dangerous condition, was a proximate cause of Mr. Baker's accident.  Interpreting the facts in a light most favorable to Plaintiffs, and drawing all reasonable inferences in Plaintiffs' favor, the Court finds that a reasonable jury could find, based on the record before the Court, that the failure to warn Mr. Baker about the lights, "stop work" at the Rowland Well Pad, or correct the direction of the lights at issue constituted a breach of Magna's duty to

---

responsibilities it assumed.  Indeed, we believe the inquiry regarding what level of review and inspection the parties intended should be left to the factfinder who will have the opportunity to consider the testimony of the parties and the parties' experts.").

direct traffic on the Access Road in a non-negligent manner, and that the same was both an actual and proximate cause of Mr. Baker's accident and injuries.  The Court rejects, at the summary judgment stage, any argument to the contrary.

While Magna may ultimately prove successful in establishing that it did not have notice of the dangerous condition, or that any failure to act was not a factual or proximate cause of the accident, the same are issues for the jury, and cannot be resolved at this time.  There is evidence of record that Magna had notice of the dangerous condition posed by the positioning of the lights, that it had the ability and authority to attempt to remedy that issue, that it failed to act, and that the same may be an actual and proximate cause of Mr. Baker's accident and injuries.  Accordingly, the Court finds that there exist genuine disputes of material fact that preclude summary judgment in Magna's favor, and the Court will deny Magna's Motion for Summary Judgment.

## IV.    Conclusion

For the reasons discussed above, the Court will deny the Motions for Summary Judgment filed by Gateway, Paris, and Magna.  An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*_____
Robert J. Colville
United States District Judge

DATED: September 28, 2021

cc/ecf: All counsel of record